**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

VICKY RODRÍGUEZ TORRES, et al.
        Plaintiffs
          v.
Government Development Bank
P.R. (GDB), Guillermo Camba,
Carlos García, Edgardo
Rodríguez-Nievez, Enid López,
Mariela Rexach
        Defendants

**CIVIL No. 10-02228-DRD**

18 U.S.C. § 1030,
18 U.S.C. § 2510,
18 U.S.C. § 2701,
29 U.S.C. § 623,
42 U.S.C. § 1981,
42 U.S.C. § 1983,
42 U.S.C. § 1985,
42 U.S.C. § 1988,
42 U.S.C. § 2000e-3
RETALIATION, TORTS, separation pay
TRIAL BY JURY

<u>**AMENDED COMPLAINT**</u>

**I.** <u>**INTRODUCTION**</u>

**1.** This is an action for retaliation and related violations of the constitutional rights of Vicky Rodríguez. The claims, filed on behalf of Mrs. Vicky Rodríguez, her husband and their conjugal partnership, arise from the acts and omissions of defendants, when they discharged Rodríguez from employment on November 10th, 2009, in retaliation and in retribution for her filing of an employment discrimination suit against GDB. Co-defendant GDB further collaborated, failed in its duty to prevent, and was deliberately indifferent to Plaintiffs' rights, and caused the damages alleged, due to their failure to adequately supervise, discipline and monitor co-defendants

Camba and Rodríguez-Nieves, whose actions and omissions were taken in deliberate indifference to Plaintiffs' rights and proximately caused their injuries. Plaintiffs' claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

2. Co-defendants' actions in retaliating against plaintiff Rodríguez in retribution for seeking protection of her Constitutional and statutory rights deprived her of her due process rights for a full and fair determination concerning her working conditions.

3. This complaint also includes an action for the Tort of intentional Spoliation of Evidence, and related causes of action arising under the *Computer Fraud And Abuse Act*, *Wiretap Act*, *Electronic Communications Privacy Act*, and *Stored Communication Act*, as well as other related violations of Plaintiff's civil rights committed by Co-defendants. The claims, filed on behalf of Plaintiffs, arise from the acts and omissions of co-defendants, when all throughout the time period starting on or around October, 2008, and uninterruptedly until the present day, they conspired to commit and committed the tort of spoliation of evidence, with the deliberate intent and actual effect of interfering with Plaintiff's Civil Actions brought against Defendants in the

United States District Court for Puerto Rico, case number 09-01151-JP, and case number 09-02199-FAB. Defendants conduct was in abuse of their official governmental power, and in abuse of judicial process.

4. Plaintiff also files these actions against unnamed employees or agents of GDB, whose identities are unknown at this time, who during all times relevant to this complaint occupied in-house legal counsel and Information Technology positions and functions, all of whom were deliberately indifferent to Plaintiff's rights and caused the damages alleged, due to their acts and omissions, including but not limited to their failure to adequately supervise, evaluate, discipline, assign and monitor other GDB employees, contractors or agents directly involved in the unlawful conduct causing damages to Plaintiff. Plaintiff also brings this action against as yet unidentified other persons, employees and agents of GDB, whose actions and omissions were taken in deliberate indifference to Plaintiff's rights and proximately caused the injuries herein alleged. Plaintiff's claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

5. Co-defendants' actions deprived Plaintiff of her due process rights.

## II. JURISDICTION

3

6. This action is brought pursuant to **18 U.S.C. § 1030**, et. seq., **18 U.S.C. § 2510**, et. seq., **18 U.S.C. § 2701**, et. seq., as it relates to Defendants' execution and conspiracy in furtherance of computer crimes which provide civil remedies to Plaintiff.

7. This action is brought pursuant to: **29 U.S.C. § 623**, Subsection **(d)**, of the Age Discrimination in Employment Act (ADEA); **42 U.S.C. §1981**, as it pertains deprivation of rights of non-white persons; **42 U.S.C. § 1983**, as it pertains to deprivation of rights under color of state law; **42 U.S.C. § 1985**, as it pertains to co-defendants conspiracy to violate Plaintiff's civil rights, motivated by class-based invidious discriminatory animus; **42 U.S.C. § 2000e-3**, Subsection **(a)**, Title VII of the Civil Rights Act; **42 U.S.C. §1988**, Civil Rights Attorney's Fee Act.

8. Jurisdiction is founded upon **28 U.S.C. §§ 1331**, **1337**, **1343** and **29 U.S.C. § 626**, and the aforementioned statutory provisions. Plaintiffs further invokes the supplemental jurisdiction of the Court pursuant to **28 U.S.C. § 1367** to hear and decide claims arising under the laws of Puerto Rico and any related claims which are deemed to be within respect to the pendent parties.

9. This is the proper venue to bring this action, since the cause of action arose in Puerto Rico and all parties reside in this jurisdiction.

4

### III. PARTIES

10. Plaintiffs are: Vicky Rodriguez, former employee of co-defendant Commonwealth of Puerto Rico Governmental Development Bank ["**GDB**"], her spouse, Luis Rafael Maldonado Vaillant, and their conjugal partnership.

11. Co-defendant GDB is a Puerto Rico public corporation created under **7 L.P.R.A. §551**, et seq..

12. Co-defendant Carlos García was at all times relevant to this complaint President, officer and employee of GDB.

13. Co-defendant Guillermo Camba is and was at all times relevant to this complaint Human Resources Director, officer and employee of GDB.

14. Co-defendant Edgardo Rodríguez-Nieves was at all times relevant to this complaint Human Resources Sub-Director, officer and employee of GDB.

15. Co-defendant Enid López was at all times relevant to this complaint Rodríguez' direct supervisor at GDB, officer and employee of GDB.

16. Co-defendant Mariela Rexach is and was at all times relevant to this complaint legal counsel, an agent of its principal, GDB.

### IV. FACTUAL BACKGROUND - RETALIATION

17. Plaintiff Rodríguez was employed by co-defendant GDB starting on or around 1996.

5

18. On February 17th, 2009, Plaintiff filed an employment discrimination complaint against co-defendant GDB, and various individual co-defendants. *Rodriguez-Torres, et al vs. Government Development Bank for Puerto Rico, et al, 09-CV-01151 (JP)*.

19. On or around July 15th, 2009, in good faith and full compliance with **Fed.R.Civ.P. 26**, Plaintiff's disclosures and answers to discovery requests in the aforementioned case were comprised of documents with which she came into contact as part of her day-to-day job related activities, without disturbing, removing or extracting from GDB facilities the original versions of the same documents. At least as it pertains to Plaintiff, the original documents remain undisturbed, mostly in electronic format, under the custody and control of GDB.

20. The format of the above production was electronic, Acrobat PDF, fully bookmarked, bates stamped, and text searchable. Plaintiff also provided a list identifying the nature and content of the documents produced.

21. On August 12th, 2009, GDB took a deposition on Plaintiff, where the above production was thoroughly examined. On that same date GDB made a Plaintiff a settlement offer. On August 20th, 2009, a Thursday afternoon, Plaintiff communicated to GDB the rejection to said settlement offer.

22. Up to that point in the litigation, and at all stages of the litigation between Plaintiff and GDB, co-defendant Rexach exhibited towards Plaintiff an attitude of contempt, condescension, and abhorrence, motivated by Rexach's pretentiousness of having superior racial, ethnic, and ancestry characteristics than those of Plaintiff: Plaintiff, a small-town, regular person, of modest to middle-class origins, public-school educated, and a working-class *curriculum vitae*; Rexach, a big-city, "family-name", social-elite member, exclusive Private-school and Ivy-league educated, with Law-review credentials, and a *curriculum vitae* that flaunts a Federal judicial-clerkship, together with a partnership in a large law firm.

23. In response and retribution to Plaintiff's rejection of aforementioned settlement offer, co-defendants Rexach, García, and Camba concocted a pretextual justification to terminate Plaintiff, based on the purported confidentiality and purportedly privileged nature of the documents comprised in Plaintiff's disclosures and production more than a full month earlier.

24. Co-defendants Rexach, García, and Camba, in frustration with not being able to put an end to the litigation, and motivated by the same specific class-based, invidiously discriminatory animus against Plaintiff on account of her membership in the

aforementioned demographic, devised the above scheme with the intent of depriving Plaintiff – whom they considered "non-white" – of the equal enjoyment of rights secured by the law to members of the same class as co-defendants Rexach, García, and Camba, who consider themselves as "whites".

25. Rexach's interference with the employment-contract relationship between Plaintiff and GDB, was not in furtherance of GDB's interests, but rather on her own personal interests: her helplessness in getting her blue-blood "out of her system", as she took it out on those she perceived as being part of a genetically, ethnically and physiognomically distinctive subgrouping of *homo sapiens*, undeserving of being treated with the same dignity as those members of her same elite civil community.

26. Co-defendant Camba, acting on Rexach's instructions and the agreement connived between Rexach, García, and Camba, on August 24th, 2009, barely the Monday morning following the Thursday when the settlement offer was rejected, summoned Plaintiff to a meeting the following day.

27. On August 25th, 2009, Plaintiff met with co-defendant Camba, who informed Plaintiff that GDB had decided to initiate an administrative disciplinary process against Plaintiff. Plaintiff was served a "charge document", alleging specifically that the documents disclosed as part of her

aforementioned discovery duties contained "privileged and confidential" information belonging to GDB, its clients and other third parties. In the above "charge document", plaintiff was summoned to appear at a disciplinary hearing on August 31st, 2009 before co-defendant Camba.

28. Plaintiff filed a charge of discrimination before the EEOC on September 4th, 2009, and the EEOC issued the corresponding right to sue letter on October 22nd, 2009. Said charge of discrimination was solely based on her being subject to the aforementioned disciplinary proceeding, in retaliation for her bringing suit against GDB in case 09-01151-JP. Accordingly, said charge of discrimination did not include any mention, reference, or sought relief from a retaliatory discharge from employment.

29. Plaintiff was eventually discharged from employment on November 10th, 2009, when she had already filed her charge of discrimination, and was in possession of a right to sue letter from the EEOC for being subjected to the retaliatory disciplinary proceeding.

30. Plaintiff filed a second employment discrimination cause of action against GDB on November 25th, 2009, case 09-02199-FAB. The sole basis for this cause of action was her being subject to the aforementioned disciplinary proceeding, in retaliation for her bringing suit against GDB in case 09-01151-JP. In

support of her claim, Plaintiff filed the right to sue letter issued by the EEOC on October 22nd, 2009, prior to her termination, which did not occur until November 10th, 2010.

31. Accordingly, the second case Plaintiff had brought against GDB (09-02199-FAB), did not define within its relevant time period any events occurring after the disciplinary proceeding GDB had initiated against her had concluded with her termination, on November 10th, 2009.

32. Plaintiff, in seeking relief for her unlawful termination, chose to continue to pursue and exhaust the administrative remedy afforded by her employer, GDB, and filed an internal complaint on February 8th, 2010.

33. During the pendency of the administrative claim, Plaintiff's position was eliminated as part of the reorganization approved by the GDB's Board of Directors in May 2010. Said reorganization was designed to disparately impact those members of Plaintiff's unpopular group, in contrast to the group to which all named co-defendants belong.

34. As the administrative review continued to become an increasingly protracted proceeding, Plaintiff was fast approaching the 300-day mark that establishes the statute of limitations for bringing suit for the Title VII causes of action arising out of her termination on November 10th, 2009, and which did not accrue until Plaintiff's filing of the GDB

internal complaint on February 8th, 2010. Accordingly, and in order to preserve her right to seek such relief, Plaintiff filed another charge of discrimination against GDB with the EEOC on August 18th, 2010, and effectively and finally obtained a right to sue letter to seek relief for said termination on September 16th, 2010.

35. The administrative review of Plaintiff's termination, in a purely *pro forma* procedure, affirmed the decision to terminate Plaintiff on December 1st, 2010.

36. Co-defendants' retaliatory conduct has been extremely detrimental to Plaintiff's emotional and physical health necessitating urgent medical treatment and consequent medical expenses.

37. All injuries suffered by Plaintiff are as a direct and proximate result of the grossly negligent and culpable actions and omissions of co-defendants, which were taken in reckless disregard of and in deliberate indifference to Plaintiff's rights, and as a consequence of the overt acts committed by all co-defendants in connection with the Rexach, García, and Camba conspiracy.

38. This action is brought, *inter alia*, pursuant to **42 U.S.C. § 1983**, as it pertains to deprivation of rights under color of state law; **42 U.S.C. § 2000e-3**, Subsection **(a)**, Title VII of the Civil Rights Act, and as co-defendants García, Rodríguez-

11

Nieves, López, and Camba were at all times relevant to this complaint officers and employees of GDB, acting under color of the law of the Commonwealth of Puerto Rico.

### V. FACTUAL BACKGROUND – COMPUTER RELATED CLAIMS

39. The relevant time period for the present complaint starts as early as August 9th, 2008, or the full two full years set as the statute of limitations for the underlying Computer Fraud and Abuse Act (CFAA) cause of action, **18 U.S.C. § 1030**, and continues to the present date through the continued actionable acts and omissions engaged in by co-defendants.

40. This is a cause of action arising under the Computer Fraud And Abuse Act (CFAA), and the Wiretap Act and Stored Communications Act of the Electronic Communications Privacy Act (ECPA). Out of the same acts and omissions committed by co-defendants in violation of the provisions of CFAA and ECPA, also arise causes of action in Tort recognized by **Articles 1802** and **1803 of the Puerto Rico Civil Code**, including, but not limited to, the following: negligence (duty of care, breach of that duty, causation and damages), negligence "per se", infliction of emotional distress, obstruction and interference with legal remedies, intentional Spoliation of Evidence, as well as other related violations of Rodríguez's civil rights committed by co-defendants.

41. Rodríguez contends that co-defendants Rodríguez-Nieves and López, while exceeding their legitimate and business function authorization and access privileges: deleted, removed and destroyed information, documents and data contained on protected computers owned by GDB as a financial institution; and knowingly caused the transmission of a program, information, code or command to alter and tamper with the contents of the Lawson Human Resources and Microsoft Exchange Server environments deployed in support of GDB's business functions, including but not limited to: the underlying components of files, folders, mailboxes, databases, data stores, storage groups, information stores, transaction and journaling logs, back-up and restore components; and that as a result of such conduct, they intentionally caused Rodríguez to suffer loss and damages in excess of $5,000.00, in violation of the CFAA.

42. The claims, filed on behalf of Rodríguez, arise from the acts and omissions of co-defendants Camba, Rodríguez-Nieves, López, and Rexach, when all throughout the time period starting on or around August, 2008, and uninterruptedly until the present day, they conspired to violate the CFAA, and committed the tort of spoliation of evidence, with the deliberate intent and actual effect of interfering with Rodríguez's Civil Actions brought against Defendants in the United States District Court

13

for Puerto Rico, case number 09-01151-JP, and case number 09-02199-FAB, and the GDB internal administrative procedure. Rodríguez's injuries caused by co-defendants' behavior outlined above, also extend to interfere with other causes which to this date have accrued, for unlawful termination and separation pay. Defendants conduct was in abuse of their official governmental power, and in abuse of judicial process.

43. Unnamed co-defendants include employees, service providers, or agents of GDB, whose identities are unknown at this time, who during all times relevant to this complaint occupied in-house legal counsel and Information Technology positions and functions, all of whom were deliberately indifferent to Rodríguez's rights and caused the damages alleged, due to their acts and omissions, including but not limited to their failure to adequately supervise, evaluate, discipline, assign and monitor other GDB employees, contractors or agents directly involved in the unlawful conduct causing damages to Rodríguez.

44. Rodríguez contends that co-defendants had an agreement between themselves to intentionally and knowingly access GDB computers, exceed their authorization, and without any legitimate or valid GDB business reason or authorization, permanently delete all copies of all incriminating records, files and communications from said computers which could be

**14**

discoverable   and   relevant   to   various   judicial   and
administrative  causes  of  action  in  which  Rodríguez  is  their
adversary,  with  the  intend  to  personally  profit  from  said
destruction,   by   subverting   the   judicial   processes   and
interfering  with  Rodríguez's  legitimate  access  to  discoverable
information,  and  consequently,  her  Constitutional  right  of
access to the judicial system.

45. Co-defendants' actions deprived Rodríguez of her due process
rights,  obstructed  justice,  and  were  done  under  color  of  state
law.

### VI. GDB'S INFORMATION TECHNOLOGY LANDSCAPE

46. GDB  employs  the  Microsoft  Exchange  Server  2003  Enterprise
Edition  software  (Exchange),  spread  out  in  approximately  40
Intel-based server computers.

47. Exchange  has  robust  centralized  control  and  data  protection
features  that  protect  GDB  from  data  loss  which  could
inevitably  carry  serious  regulatory  and  financial  risks.  Said
control  features  are  implemented  through  a  distributed  file
directory-tree  system,  regardless  of  the  number  of  the
computer  servers  hosting  the  application,  which  easily  and
significantly  not  only  prevent  unauthorized  and  accidental
distribution of data, but also its destruction.

48. The  above  wide  range  of  information  protection  and  control
features   are   implemented   by   Exchange   Software   System

Administrators (Administrators), who fine tune Exchange configurable-parameter policies, so that the right level of control is automatically applied to databases, file-systems, and individual messages, based on specific senders, recipients, content, and the organizational unit within which each GDB employee works. For the obvious internal control, segregation of duties, audit and regulatory mandated reasons, Administrators belong to an enterprise's Information Technology organization, removed from all the business and transaction originating organizations.

49. Exchange stores its information in five (5) Storage Groups per server. Each storage group can have as many as five (5) Databases, and each database stores up to sixteen (16) terabytes. Each terabyte equals one-million megabytes, which is roughly equivalent to one-billion pages of information. In other words, stored strictly and exclusively only in Exchange, GDB has the storage capacity of 3,520 billion pages worth of electronic documents.

50. Exchange databases storage structure keeps messages in a Single Instance architecture, whereby messages are not kept as discrete, duplicate items, repeated once for each targeted mailbox which happens to be the recipient of the given message. Instead, each "virtual message" is kept once, broken-down in its different informational objects in multiple

transaction logs, and is assembled on-the-fly, when accessed or invoked by each "virtual recipient" or computer user.

51. Administrators define Security and Distribution Groups, each with its unique security identifier, based on the different functional groups, divisions, and departments of the enterprise organization. Groups are subsequently divided in Roles, and Projects, within the different groups, and this most basic level of organizational granularity is then assigned restrictions, permissions, and storage limits. Individual user accounts, per employee, are then assigned to the different organizational units, and inherit the characteristics, controls, and limitations defined for that particular unit.

52. The storage limits thus defined by the Administrators for each mailbox, include parameters to control Deleted Item Retention Time. When an individual business-function user – who does not have Administrator-level privileged access to the most sensitive Exchange commands – deletes an e-mail, contact, event, or appointment information object, said object is not actually deleted from the Exchange Information Store, but instead, hidden from the user and kept for the specified period of time configured by the above retention parameter.

53. Alternatively, Administrators can, in lieu of a retention time period, configure a parameter that retains deleted items

indefinitely, until the mailbox store is successfully backed-up. In any event, the above retention parameters allow Administrators to quickly and easily salvage deleted items, without the necessity of a more cumbersome and time-consuming process of restoring the mailbox from back-up media storage.

54. Exchange back-up and recovery functionally protects its information against database corruption, hardware failure, accidental loss, and even deliberate destruction of e-mail messages. These utilities are defined and controlled by Administrators to run, once properly configured, automatically without human express intervention. As individual mailboxes are defined and assigned to each individual user, they represent the smallest unit of recovery than can be processed by the back-up and recovery utilities.

55. Transactions, on the other hand, control all changes that occur in a database. Exchange's failsafe functionality to ensure proper flow and recoverability of message data further includes the capability of maintaining activity, message, transactional, and monitoring logs. Through these logs, Exchange databases can be restored to reflect their state or snapshot at any given point or moment in time. Messages can be recovered by searching and retrieving from the logs based on individual message identification, by sender, by server

hosting or processing the message, by recipient, by date, or virtually any search-string definable.

56. For López and Rodríguez-Nieves, as "Financial end-users" to have been able to permanently destroy the electronic documents at issue, to the point that they could not even be recovered within a limited and relatively recent time-frame, they necessarily would have had to access Administrator privileged and sensitive capabilities, where retention periods and transaction logs with which the missing documents could have been recovered were altered, and said documents irremediably lost.

57. GDB also employs an advanced Human Resources software application, *Lawson Human Resource Management*, which maintains all records relevant to Rodríguez' prior causes of action against GDB, including, but not limited, to: recruitment, hiring, promotion, advancement, scheduling, training, performance, discipline, and time management.

58. *Lawson Human Resource Management* also has robust security capabilities designed to protect GDB from unauthorized data access, designed around GDB's definition and configuration of its: internal business processes; banking industry security needs; and roles, permissions, and business rules specifically designed and enforced by GDB.

### VII. CHARACTER OF EVIDENCE DESTROYED

19

59. During the discovery process in case 09-01151-JP, Rodríguez took a deposition on López, in which she directly questioned the deponent in regards to career development related communications from which Rodríguez had been singled out to be excluded, for no apparent legitimate reason, while all other similarly situated individuals, however, were included in said communication.

60. Therefore, the relevant and discoverable documents and communications at issue, were all those supporting, or challenging, Rodríguez' allegations that she had been routinely singled-out to be excluded from work-related activities, communications, and career development opportunities, all based on a discriminatory animus against her.

61. Prior to and during the progress of the case: López was Rodríguez' direct supervisor; Camba was GDB's Human Resources Director and records custodian; Rodríguez-Nieves was GDB's Human Resources Sub-Director; and Rexach was counsel representing GDB in the case.

62. Most notably, during said deposition examination there were striking discrepancies between the amount of documents disclosed and produced by López and Rodríguez-Nieves, directly from GDB's official archives and files, and many of those which Rodríguez had been able to disclose and produce.

20

Essentially, López' and Rodríguez-Nieves' production had significant gaps of missing documents, which Rodríguez somehow was able to secure from alternative sources, such as her own personal files, or those of other colleagues.

63. Counsel for Rodríguez directly questioned the deponent in regards to career development related communications from which Rodríguez had been singled out to be excluded, for no apparent legitimate reason, while all other similarly situated individuals, however, were included in said communications.

64. During the examination, and as an explanation as to why she had failed to disclose or produce e-mail communications which she should have authored or received, López readily admitted to routinely deleting communications from GDB's electronic messaging system. López justification for such evidence destruction was that she had to do so in order to prevent her mailbox from becoming full. The deleted communication which came about during said questioning, was precisely one from which Rodríguez was excluded, as opposed to all other similarly situated individuals.

65. Rodríguez promptly moved the Court to issue an order for preservation and litigation hold.

66. López further admitted that she had failed to retain any electronic copies of any e-mail that might have been related

to the scheduling of the training sessions at issue, and which were material to Rodríguez's claims in the case.

67. López further made the disclaimer that she would be unable to produce any e-mail communications in native electronic format that had been issued as recently as April, 2008, although GDB had produced disclosures as old as May 10th, 1991. Rodríguez indeed has been able to identify up to ninety-seven (97) documents produced by GDB with a creation date prior to or earlier than April, 2008.

68. López' bold assertion above was made eventhough GDB had massive back-up and restoration capabilities, and even considering that GDB was under the obligation of having placed a litigation and preservation hold starting at least as early as on November, 2008.

69. In effect, when questioned as to why she had not retrieved a full set of documents from GDB's official records, and when she was asked to cure said production deficiencies, López asserted that any electronic documents that she had deleted, were effectively and permanently unrecoverable, and not even retrievable from GDB's back-up and archiving system.

70. López was unable to explain, however, how certain GDB employees were able to have mailbox configurations which extended to a size of 6,105.13 of Megabytes, or "MB", while

hers meagerly extended to a size of 496.32 in the same unit of measure.

71. López and Rodríguez-Nieves deliberately deleted and destroyed Human Resources electronic records and e-mail communications from the GDB message and collaboration system, such that they were rendered permanently unrecoverable through any of GDB's technical or administrative data-loss response systems or capabilities: the KPMG Business Continuity Plan, Evertec and IBM Tivoli or equivalent storage management software, Exchange native back-up and restore utilities, or Exchange monitoring and transaction logs.

72. López and Rodríguez-Nieves, as business computer users with a financial, legal, and administrative background, and without any Information Technology expertise, function, responsibility, or authority to execute Administrator privileged, sensitive transactions or to define software configuration parameters, improperly gained access to GDB computers and software, whereby they effectively were able to perpetrate the evidence destruction, with the intended result that incriminating communications which were adverse to their interest in litigation, would be permanently lost.

73. López and Rodríguez-Nieves, after obtaining a limited level of initial access authority proper to their roles as business users, obtained access to highly protected information in the

form of the forbidden virtual space of the Exchange configuration parameters, that they were not entitled to access according to GDB policy.

74. Consequently, López and Rodríguez-Nieves intentionally and deliberately accessed a computer without authorization or in excess of authorization, through which they took specified forbidden actions, ranging from obtaining and changing software behavior and response, to damaging a protected computer or computer data in the records of a financial institution.

75. López and Rodríguez-Nieves could not have perpetrated all of the above destruction of evidence, without the direct involvement, assistance, and acquiescence of co-defendant Camba, as GDB's electronic records custodian.

76. Co-defendants Camba, Rexach, and other still unknown GDB Information Technology and In-house Counsel officials, facilitated López' and Rodríguez-Nieves' actions, and further conspired with López and Rodríguez-Nieves to violate the CFAA.

77. GDB terminated Rodríguez's employment on November 10th, 2009, and Rodríguez sought to exhaust the administrative internal proceeding available within GDB.

78. Rodríguez promptly sought discovery of: (1) Security policies and access logs for all relevant Information Technology components; (2) Policies and Procedures in place for the use

of hardware, software, and telecommunication components currently in place at GDB; (3) computer and equipment usage "chargeback" or "cost accounting" records or procedures; (4) Business Continuity Plan; (5) Records Management Plan; (6) Communications certifying as to the initiation of a preservation plan or litigation hold.

79. Specifically, GDB objected to the request for the preservation plan and litigation hold communications as being privileged communications. GDB, however, did readily admit that the only responsive document to those effects was an e-mail communication sent by counsel and here co-defendant Rexach, on December 22nd, 2009.

80. Furthermore, co-defendant Camba, as designated records custodian for all of GDB, whether electronic or analog, under oath certified that GDB does not maintain any of the following: (1) Security policies and access logs for all relevant Information Technology components; (2) Policies and Procedures in place for the use of hardware, software, and telecommunication components currently in place at GDB; (3) computer and equipment usage "chargeback" or "cost accounting" records or procedures; (4) Business Continuity Plan; (5) Records Management Plan.

81. Rodríguez filed a retaliation cause of action against GDB on November 25th, 2009, case 09-02199-FAB, currently pending

before the 1st Circuit Court of Appeals in case 10-2500. In the event that the case is remanded back to the District Court, pending before the court will be several instances of GDB's discovery behavior as laid-out above.

82. Consequently, all discovery which had been held in abeyance by the District Court, and consequently, any artifices through which GDB is able to destroy relevant evidence in said case, and render such evidence – as per their own admission – unrecoverable, continues to this day, and extends beyond the spoliation issue  that was before the Court in case 09-01151-JP.

83. GDB's continued litigation behavior as it pertains to case 09-02199-FAB, which still has not concluded its discovery phase, is actionable separately under the CFAA.

### VIII. <u>FIRST CAUSE OF ACTION - RETALIATION</u>

84. 29 U.S.C. § 623 and 42 U.S.C. § 2000e-3 contain the anti-retaliatory provisions of the federal Civil Rights legislation.

85. Plaintiffs were involved in a statutorily protected activity, in as much they had initiated a complaint process - *09-CV-01151 (JP)* and *09-CV-02199 (FAB)* - against co-defendant GDB, and were actively participating in it in such process in opposition to GDB's discriminatory actions.

86. Co-defendants took adverse employment action against Plaintiff, in the form of terminating her employment, eliminating her position in a thespian organization-wide "reorganization", and subjecting her to protracted, *pro forma*, and rigged internal administrative proceeding.

87. Co-defendants were aware of Plaintiff's protected activity before undertaking the above adverse employment actions, and yet still did so with retaliatory and discriminatory intent.

88. Co-defendants attempted to sanitize the above retaliatory and discriminatory adverse employment actions by propounding a purported reorganization and producing purported evidence of a legitimate, nondiscriminatory reason for the aforementioned employment actions, but such evidence amounts only to a pretext designed to hide the unlawful retaliatory and discriminatory motive and behavior.

89. Co-defendants' conspiracy and retaliatory, discriminatory motive is unmasked by their late reaction to documents they were well aware of as early as June 19th, 2009, and regarding which they exhibited a *blasé*, relaxed attitude, until August 20th, 2009, when their prospects of a quick settlement of the underlying claim on the cheap had evaporated.

90. Such a late reaction at the very least constitutes any waiver of privacy, confidentiality, or privilege. Furthermore, Co-defendants' once aloof attitude towards documents which

suddenly and unexpectedly are grounds for disciplinary proceedings against an admittedly valued and trusted employee of 16 years, constitutes an abuse of process.

91. Co-defendants' *blasé*, aloof attitude towards the documents at issue – prior to August 24th, 2009, that is – will be further evidenced by their lack of security measures, access control, business continuity, or specialized backup and restoration procedures defined and enforced for the same.

92. Co-defendants' disciplinary actions against Plaintiff are further unsustainable as legitimate, when the documents at issue are public, and over which any citizen has a right to access.

93. Plaintiffs protected activity of initiating the above legal proceedings against co-defendant GDB, and her membership in the aforementioned class, were the direct cause which motivated all co-defendants to engage in the conspiracy and adverse employment actions against Plaintiff.

94. Co-defendants' acts constitute significant retaliatory treatment that is reasonably likely to deter Plaintiffs and other GDB employees from initiating, or participating indirectly in protected activities, such as appearing as witnesses on behalf of Plaintiffs in the aforementioned litigation, and thus have had, and currently have, a chilling effect upon the willingness of individuals to speak out

against co-defendant GDB's employment discrimination, or to participate in other administrative or judicial employment discrimination proceedings.

95. The above practices were undertaken by co-defendants with malice and reckless indifference to the federally and locally protected rights of all Plaintiffs.

96. The above adverse employment actions materially affect the terms, conditions, or privileges of Plaintiff's employment.

97. Plaintiff's allegations as set forth in the above paragraphs establish a claim of Civil Rights retaliation by stating: Plaintiff's involvement in a statutorily protected conduct; Co-defendants' subsequent disciplining of plaintiff, to a degree that might deter any ordinary person from such conduct; the causal link between the two incidents.

98. Plaintiff's showing of her participation in a protected activity under Title VII is clear in her initiating a charge against GDB under Title VII.

99. The link between the protected activity, and the adverse employment actions engaged in by co-defendants against Plaintiff create a reasonable inference of causation by their close proximity in time.

## IX. <u>SECOND CAUSE OF ACTION – CIVIL RIGHTS</u>

100. **42 U.S.C. § 1981** prohibits discrimination based on race, ethnicity, ancestry or alienage.

101. Plaintiff is a member of the "non-white" class protected by the this statute.

102. Co-defendants retaliatory and discriminatory actions in terminating Plaintiff and eliminating her position were done with discriminatory intent. Where co-defendants carried out class-neutral actions, such actions nonetheless had discriminatory impact on the members of Plaintiff's protected class.

103. Where Plaintiff was denied the rights protected by this statute, she suffered damages, as a consequence of the behavior complained of, which itself was conducted as a consequence of co-defendants' discriminatory animus.

104. **42 U.S.C. § 1983** prohibits the violation of federal rights by governmental officials under color of state law.

105. Co-defendants García and Camba are at all times relevant to this complaint officials of the Commonwealth of Puerto Rico government, whose act sand omissions directly injured Plaintiff.

106. Plaintiff may recover damages under **42 U.S.C. § 1983** from a state official who, while acting under color of state law, commits a constitutional tort, and who violates either her federal or state statutory rights.

107. **42 U.S.C. § 1983** suits continue to be a means of enforcing constitutional and statutory rights. Its Constitutional and

statutory provisions reach state actors, and further may be brought against individuals, as well as against state entities. It follows, then, that Congress must have explicitly envisioned that private plaintiffs would bring constitutional and statutory claims to challenge the complained about discrimination in the paragraphs above via **42 U.S.C. § 1983**. Moreover, Title VII of the Civil Rights Act of 1964, routinely has been interpreted by courts to allow for parallel and concurrent **42 U.S.C. § 1983** claims.

108. In light of which, Plaintiff has made a sufficient and particularized showing that her constitutional and statutory rights, both at the federal and state level, have been violated by all co-defendants directly, by their own deliberate and voluntary actions.

109. An individual's proprietary right in continued employment falls within the Fifth Amendment's prohibition against deprivation of property without due process of law. **U.S. Const. Amend. V**. The prohibition applies to Puerto Rico and to the states through the Fourteenth Amendment. **U.S. Const. Amend. XIV § 1.**

110. Fourteenth Amendment substantive due process claims often turn on whether the alleged misconduct shocks the conscience. The substantive component of the Due Process Clause is violated by executive action when it can properly be

**31**

characterized as arbitrary, or conscience shocking, in a constitutional sense.

111. The allegations of the present complaint make a showing of a sufficient and direct connection between all co-defendants in their own personal conduct, and the conscience-shocking behavior they engaged in against Plaintiff. All co-defendants are identified by Plaintiff as the individuals who directly planned, supervised, and executed all of the retaliatory and tortuous acts which are detailed in this complaint. García and Camba, the government officials who themselves inflicted truly outrageous, uncivilized, and intolerable harm on Plaintiff and her property rights may be held personally liable.

112. **42 U.S.C. § 1985** prohibits conspiracies motivated by a class-based, invidious discriminatory animus.

113. The acts constituting the conspiracy between all named co-defendants, as described above, were discriminatorily motivated, and directly injured Plaintiff.

114. **42 U.S.C. § 1988** grants this Court authority to award Plaintiffs reasonable attorney's fees and the other costs of this action.

## X. <u>THIRD CAUSE OF ACTION – SEPARATION PAY</u>

115. This cause of action for wrongful discharge and damages arises under of **Article II §§1**, **8** and **16** of the Constitution of the Commonwealth of Puerto Rico, which prohibit the

32

termination of an employee in violation of a public policy of constitutional magnitude, and pursuant to Law 80, **29 L.P.R.A. §185a**, which provides for statutory separation pay.

116. Plaintiff's discharge, in light of all of the paragraphs above, was wrongful, and after which Plaintiff was not issued any form of severance or separation compensation.

## XI. <u>FOURTH CAUSE OF ACTION - TORTS</u>

117. The pervasive retaliatory actions, violations to Plaintiff's rights have disrupted Plaintiffs' health, peace of mind, family life, and lifestyle.

118. The actions and omission described herein constitute a tort under the Constitution and laws of the Commonwealth of Puerto Rico, for which co-defendants respond to Plaintiffs in compensatory damages, pursuant to **Article 1802** and **1803** of the **Civil Code of Puerto Rico.**

119. Specifically, and in regards to co-defendant Rexach, her deliberate acts constitute a tortious interference with Plaintiff's employment contract with GDB.

120. Rexach, as an agent for GDB, interfered with Plaintiff's employment, in furtherance of her personal interests, not GDB's.

121. Rexach's intentional tort was intended to so interfere, and Reaxach knew that such interference and the acts further

carried out by co-defendants GDB, García, and Camba were a substantially certain result of the interfering conduct.

## XII. FIFTH CAUSE OF ACTION – CFAA

122. Plaintiff repeats and realleges each and every preceding paragraph of this complaint.

123. López and Rodríguez-Nieves deliberately deleted and destroyed electronic records and e-mail communications from the GDB Human Resources and message and collaboration systems, such that they were rendered permanently unrecoverable through any of GDB's technical or administrative data-loss response systems or capabilities: the KPMG Business Continuity Plan, Evertec and IBM Tivoli or equivalent storage management software, Exchange native back-up and restore utilities, or Exchange monitoring and transaction logs.

124. López and Rodríguez-Nieves, as business computer users with a financial, legal, and administrative background, and without any Information Technology expertise, function, responsibility, or authority to execute Administrator privileged, sensitive transactions or to define software configuration parameters, improperly gained access to GDB computers and software, whereby they effectively were able to perpetrate the evidence destruction, with the intended result that incriminating communications which were adverse to her interest in litigation, would be permanently lost.

**34**

125. López and Rodríguez-Nieves, after obtaining a limited level of initial access authority proper to their roles as business users, obtained access to highly protected information in the form of the forbidden virtual space of the Lawson and Exchange configuration parameters, that they were not entitled to access according to GDB policy.

126. Consequently, López and Rodríguez-Nieves intentionally and deliberately accessed a computer without authorization or in excess of authorization, through which theu took specified forbidden actions, ranging from obtaining and changing software behavior and response, to damaging a protected computer or computer data in the records of a financial institution.

127. Plaintiff suffered damages in the form of increased litigation costs, as well as medical expenses, and pain and suffering which aggravated her delicate mental and physical condition, costs incurred, and consequential damages, aggregating in excess of $500,000.00

128. López' and Rodríguez-Nieves' actions as outlined above violate the provisions of the Computer Fraud and Abuse Act (CFAA), **18 U.S.C. § 1030**, et seq.

129. Co-defendants Camba, Rexach, and other still unknown GDB Information Technology and In-house Counsel officials,

facilitated López' and Rodríguez-Nieves' actions, and further conspired with them to violate the CFAA.

130. The actions and omissions described herein also constitute a violation of due process by governmental officials, in violation of the United States Constitution and are actionable pursuant to **42 U.S.C. § 1983**.

131. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

132. Given the wanton and malicious actions and omissions as described herein, the plaintiffs are entitled to an award of punitive or exemplary damages.

## XIII. <u>SIXTH CAUSE OF ACTION – SCA</u>

133. Plaintiffs repeat and reallege each and every preceding paragraph of this complaint.

134. López' behavior above details actions whereby she intentionally accessed without authorization a facility through which an electronic communication service is provided, intentionally exceeding her level of authorization to access said facility, whereby she accessed and altered electronic communications, and further prevented subsequent legitimate and authorized access to said communications, while they were in electronic storage in such system or facility.

135. López' actions as outlined above violate the provisions of the Stored Communications Act (SCA), **18 U.S.C. § 2701**, et seq, and the Electronic Communications Privacy Act (ECPA), **18 U.S.C. § 2510**, et seq.

136. Co-defendants Camba, Rexach, and other still unknown GDB officials, facilitated López' actions, and further conspired with López to violate the SCA and ECPA.

137. The actions and omissions described herein also constitute a violation of due process by governmental officials, in violation of the United States Constitution and actionable pursuant to **42 U.S.C. § 1983**.

138. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

139. Given the wanton and malicious actions and omissions as described herein, the plaintiffs are entitled to an award of punitive or exemplary damages.

## XIV. SEVENTH CAUSE OF ACTION – SPOLIATION

140. Plaintiffs repeat and reallege each and every preceding paragraph of this complaint.

141. López', Rodríguez-Nieves', and Rexach's actions above resulted in the culpable destruction of relevant evidence in the litigation of both cases before the United States District Court for Puerto Rico, 09-01151-JP, and 09-2199-FAB.

142. Said destruction of relevant evidence was motivated by bad faith, to intentionally hide evidence that would have been adverse to the interests of all co-defendants in said litigation, and in flagrant disregard of the duty to preserve, supervise, and monitor the condition of material evidence.

143. The actions and omissions described herein constitute a tort of intentional spoliation under the Constitution and laws of the Commonwealth of Puerto Rico, for which the defendants respond to the plaintiffs in compensatory damages, pursuant to **Articles 1802 and 1803 of the Civil Code of Puerto Rico**. This Court has supplemental jurisdiction to hear and adjudicate these claims arising from the same nucleus of operative facts, and to hear and adjudicate any such claim this court may deem to be brought on behalf of a pendent party to this action.

144. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

145. The actions and omissions described herein further constitute obstruction of justice, and are actionable pursuant to **42 U.S.C. § 1985**.

## XV. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs demand judgment against co-defendants, jointly and severally, and pray:

146. That this Court determine that the actions by all defendants were in violation of the Constitution and laws of the United States and of Puerto Rico;

147. That the court award plaintiffs compensatory damages and punitive damages in excess of **$1,500,000.00**, which request for compensation is made up of the following amounts: a) $500,000.00 in compensatory damages for the harm done in violation of her constitutional rights; b) $500,000.00 in compensatory damages for physical and emotional suffering; c) $500,000.00 in punitive damages due to the malicious and wanton nature of the violations alleged herein;

148. That this Court award the plaintiff a reasonable sum as unpaid wages and other compensation to date, as well as another reasonable sum as unpaid wages and other compensation for each day that elapses until the plaintiff is properly reinstated her previous job classification;

149. That this Court award the plaintiff damages in the form of full back pay, in the amount of no less than **$500,000.00** and compensatory damages in the amount of no less than **$50,000.00** for medical expenses.

150. That this Court award the plaintiffs damages in the amount of no less than **$250,000.00** for the pain and suffering of Vicky Rodríguez, and **$150,000.00** for the pain and suffering of Luis Maldonado.

151. That this court award Plaintiff separation pay for wrongful discharge pursuant to the statutory separation pay.

152. That this Court award the plaintiff liquidated damages as provided by the ADEA.

153. That this Court award the plaintiff reasonable attorney's fees and the other costs of this action under **42 U.S.C. § 1988**, Civil Rights Attorney's fee Act.

154. That Plaintiffs be awarded with the costs of this action, as well as statutory attorneys' fees and litigation expenses;

155. That the court provide for payment of all applicable interests, including prejudgment interest if indicated;

156. That Plaintiff be granted such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

157. That this Court award the plaintiff such other and further relief as may be just and equitable.

**SUBMITTED IN NEW YORK, NEW YORK, MARCH 15th, 2011.**

S/William E. Meléndez
William E. Meléndez
USDC PR No. 226902

Attorney for Plaintiffs
410 Park Avenue 15th Floor, Suite # 1223
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us

S/Miguel A. Cuadros
Miguel A. Cuadros
USDC PR No. 114814

Attorney for Plaintiffs
701 Ponce de León Avenue Suite # 215
San Juan, Puerto Rico 00907
Tel.(787)725-2652
macuadros@cuad-law.com